**SO ORDERED: June 12, 2013.**



**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MICHAEL W. MARSHALL and ) | CASE NO. 11-11194-RLM-7 |
| BEVERLY R. MARSHALL ) | |
| ) | |
| Debtors ) | |
| _____) | |
| ) | |
| BATH STATE BANK ) | |
| ) | Adversary Proceeding |
| ) | No. 12-50131 |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL W. MARSHALL and ) | |
| BEVERLY R. MARSHALL ) | |
| ) | |
| Defendants ) | |
| _____) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on May 9, 2013 upon the *Motion for Summary*

1

*Judgment* (the "Motion"), filed by Defendants, Michael W. Marshall and Beverly R. Marshall. For the reasons stated below, the Court now DENIES the Motion.

### *Facts*

The Complaint was filed February 8, 2013 and the undisputed facts establish the following events. Michael Marshall and Beverly Marshall ("the Marshalls") executed a promissory note to Bath State Bank ("BSB") in 2008 for $60,000 and Michael Marshall ("Michael") executed another promissory note to BSB in 2009 for $80,000. Each note was secured by an Agricultural Security Agreement wherein the Bank was granted a security interest in farm products (including, but not limited to, crops growing, to be grown, or to be stored) ("the Crops") and farm equipment ("the Equipment"). In the case of the 2008 note, both Michael and Beverly Marshall signed the requisite documents and in the case of the 2009, only Michael signed the documents. The security agreements were duly acknowledged and perfected.

The Marshalls had three other secured loans with BSB during the relevant time period. Loan X2649 was secured by a truck, Loan X3302 was secured by a semi-truck and trailer, and Loan X2199 was secured by the Marshalls' farm located at 5568 South County Road 100, Connersville, Indiana ("the Farmland").

On March 26, 2010, the Marshalls sold all of the Equipment including the semi-truck and trailer to B&R Equipment, Inc.("B&R") for $50,000. The equipment that was sold had been appraised by Myer Appraisal Service on March 26, 2008 at a value of $89,400, including 2 pieces of John Deere equipment with an appraised value of $56,000 on which BSB was subordinated to the lien of John Deere. On March 27, 2010, the Marshalls paid $25,100 to BSB as a payoff for their loan secured by the semi-

2

truck (Loan X3302) and BSB released its lien on the semi-truck.   On March 29, 2010, BSB left a message for Michael Marshall reminding him that BSB had a lien on all the Equipment. On April 6, 2010, BSB discovered that the Marshalls sold all of the Equipment, in addition to the Semi-truck, to B & R.  The parties dispute whether the semi-truck and trailer were cross-collateralized with the 2008 or 2009 notes.

In 2009 and 2010, the Marshalls delivered and sold the Crops to Consolidated Grain & Barge ("CGB").  The Marshalls designated evidence that they knew the Equipment and Crops were pledged as security for the 2008 note and the 2009 note. The parties have a factual issue whether BSB received the full payment made by CGB for the sale of the Crops; however, a deficiency exists on the debts that were secured by the Crops and the Equipment.  The parties dispute the correct balance owed on the 2008 and 2009 notes.

On September 2, 2011, the Marshalls filed a voluntary petition in bankruptcy under chapter 7 of Title 11 of the United States Bankruptcy Code as case 11-11194-RLM-7.  The Marshalls listed BSB as a creditor secured by the Farmland.  No other debts to BSB were listed in the petition. The petition stated that the Farmland would be surrendered.  The Farmland was specifically not abandoned by the Trustee on December 19, 2011.

Prior to the filing of the bankruptcy petition, the Marshalls had sold the Farmland to Jonathan and Deanna Godar ("the Godars") on contract.  As part of that sale transaction, the Marshalls executed a deed to the Godars for the Farmland, which was to be held by BSB until the contract was paid off.  The Godars made payments directly to BSB on the real estate contract with the Marshalls since BSB had a first mortgage on

3

the Farmland and BSB held the deed.  BSB was paid in full for their mortgage when the Godars paid the balance due BSB pursuant to their land contract with the Marshalls. On May 25, 2012, the Trustee filed a motion with the Court to complete the real estate sale contract on the Farmland which was approved by the Court.   The Marshalls received notice of these transactions within their bankruptcy.

Obviously BSB was notified of the bankruptcy, has had counsel representing BSB in the bankruptcy proceeding since December 14, 2011, and has fully participated. A Discharge Order was entered in this matter on April 19, 2012 and, as a listed creditor, BSB received notice of the Discharge Order.  On June 6, 2012, BSB sent a payment book to the Marshalls for the payments due under the loan for the Farmland.  The payment book was printed with the Debtors' names on each payment coupon and had the address of "6879 S. State Road 1, Connersville, IN 47331-8334" (the "Petition Date Address") printed below their names, which was the Debtors' residential address as of the Petition Date.

On April 16, 2012, BSB filed its Adversary Proceedings entitled *Complaint to Determine Dischargeability of Indebtedness.*   On June 22, 2012, the Marshalls filed their *Answer and Counterclaim.* The Counterclaim sought damages for emotional distress caused by BSB's alleged violation of the discharge injunction.  BSB filed a *Motion to Dismiss* counts 1 and 2 of its *Complaint,* which was granted by the Court on May 16, 2013.   Therefore, the *Motion for Summary Judgment* filed by the Marshalls is directed only to count 3 of the Complaint as well as seeking summary judgment in their favor on their Counterclaim.

4

*Discussion*

*Summary Judgment Standard*

Fed. R. Civ. P. 56(a) (applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1) requires the parties to cite to particular parts of materials in the record such as depositions, affidavits, documents, electronically stored information or declarations and stipulations to support that a fact is or is not disputed. The Marshalls cited to facts that are not in dispute, recited herein, and BSB has taken no issue with that representation. BSB filed the affidavit of a bank employee, Krissy Myers, to provide factual substantiation for the claims made in the Complaint[1]

*§523(a)(6)*

BSB alleges nondischargeability of the debt owed by the Marshalls under subsection (a)(6) of Section 523. A debt is excepted from discharge under Section 523(a)(6) if the debt is for "willful or malicious injury by the debtor to another entity or to the property of another entity". It is not enough for a debtor to commit an intentional act that leads to injury, the injury itself must be deliberate or intentional for a debt to be excepted from discharge under this section. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974,977, 140 L.Ed. 2d 90 (1998). The Complaint alleges in Count III that the Defendant "willfully and maliciously chose not to forward Plaintiff's funds to Plaintiff and used said

---

[1]Paragraphs 13, 17 and 18 were stricken from the affidavit as being inadmissible hearsay.

5

funds for other purposes", "the Marshalls willfully and maliciously caused injury to BSB by informing B & R that "Renee Marshall" owned all of the Equipment subject to BSB's security interest", "selling the Equipment to B&R without turning over the proceeds to BSB", and "willfully and maliciously caused injury to BSB by selling the Crops to CGB without turning over all of the proceeds to BSB from the Crop sales in 2009 and 2010."  The Marshalls' *Motion for Summary Judgment* contends that BSB can cite to no facts which support a claim of willfulness or maliciousness, intent to harm, or that their actions were without just cause or excuse.

Nondischargeability under §523(a)(6) requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Geiger,* 523 U.S. at 61*.*  BSB must show that the Marshalls injured its property, namely, its security interest in the Crops and Equipment, and that the injury was both willful and malicious.  Definitions of "willful" and "malicious" for §523(a)(6) purposes abound in case law.  As the Seventh Circuit acknowledged, "in the course of our research we have discovered to our surprise that courts are all over the lot in defining this phrase in section 523(a)(6)". *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 323 (7th Cir. 2012).  For example, the First Circuit defines "willfullness" as an act which the debtor is substantially certain will lead to the injury in question.  *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231- 32 (Bankr. D. Mass., 2006) (citing, *Geiger*).  For an act to be "malicious", the injury must have been wrongful and without just cause or excuse and committed in conscious disregard of one's duties.  *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997). Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in conscious

6

disregard of his or her duties, meaning that the debtor has to have been aware that the act was wrongful or lacking in just cause or excuse.  See, *Neronha*, 344 B.R. at 231- 32; *In re Levasseur*, 482 B.R. 15, 31-32 (Bankr. D. Mass., 2012).  The Seventh Circuit, canvassing the various circuits and their own takes on "willful" and "malicious", concluded that, "...whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury, or knowing it was highly likely to result from his act".  *Jendusa-Nicolai*, 677 F.3d at 324.

The selling of collateral by the debtor without first obtaining the secured creditor's consent is a conversion, but a "simple" or "technical" conversion, without more, is insufficient to except a debt from discharge under §523(a)(6).  *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 879 (8th Cir.1985) *citing* Davis v. Aetna Acceptance Co., 293 U.S. 328, 330, 55 S.Ct. 151, 152, 79 L.Ed. 393 (1934).

However, the United States Supreme Court in *Geiger* clarified the requirements of non-dischargeability under 523(a)(6), and thus, to be non-dischargeable the creditor must show the conversion of the security as well as the debtor's awareness that a harm would be sustained by the creditor.  Where the debtor converts property subject to a security interest, the creditor must prove not only that the debtor knew of the security interest, but also that the debtor knew that a transfer of the property was wrongful and certain to cause financial harm to the creditor, for the debt to be found nondischargeable. *In re Diel*, 277 B.R. 778, 783 (Bankr.D.Kan.2002) (quoting 4 Collier's on Bankruptcy §523.12[1] (15th Ed. Rev.2001)); *In re Rountree*, 2002 WL 832669 at *6 (Bankr.M.D.N.C., May 1, 2002).  An

7

Indiana bankruptcy court has noted that, In conversion cases, the "true injury" is that "the creditor's collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that the property secured ...the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that the property secured.  If so, there is intentional injury".  *Mutual Bank v. Doughty (In re Doughty),* 2011 WL 4368689 at *4 (Bankr. S. D. Ind., September 15, 2011), quoting, *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 453 (Bankr. N. D. Ind. 2001).  A deliberate and intentional disposition of a creditor's collateral or proceeds that is known by the debtor to be unauthorized and contrary to the security agreement should satisfy this test, as well, since such a misuse or conversion is substantially certain to cause injury to the creditor or its security interest.  *In re Little*, 335 B.R. 376, 387 (Bankr. N.D. Ohio 2005).  There is designated evidence in the record that the Marshalls knew the Crops and Equipment were collateral for loans with BSB, the sales were deliberate and intentional, the Marshalls knew the sales were contrary to the security agreements and it is reasonable to infer that the Marshalls knew or should have known that selling the collateral without authorization would cause harm to the security interests of BSB.  The Marshalls have failed to show that they are entitled to judgement as a matter of law based upon the evidence which has been designated to this court.

### Violation of Discharge Injunction under §524

The Marshalls also moved for summary judgment on their claim that BSB violated the discharge injunction when it sent them a payment book for the payment of a debt owed with respect to the Farmland.  The payment book was sent to the Marshalls' Petition Date

8

Address, not the address of the Farmland.  The Marshalls contend that Schedule D of their petition listed BSB as a creditor on a loan with the Marshalls for their Petition Date Address at 6870 S. State Rd. 1, Connersville, Indiana and that their Statement of Intention declared they were surrendering the property.  In fact, the Marshalls' petition reflected that Farm Credit held the mortgage on the property at  6870 S. State Rd. 1, Connersville, Indiana, and BSB had nothing to do with that property.

11 U.S.C. § 524 provides: "(a)(2)  A discharge in a case under this title– .... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived".

BSB has raised the issue of whether the Marshalls' debt to BSB was discharged since the petition only lists the debt arising from the mortgage on the Farmland and did not disclose any loans made in connection with the Crops and Equipment.  When a debtor does not schedule debts so as to give creditors notice of the bankruptcy and time to permit filing of a proof of claim or dischargeability complaint, those debts are not discharged unless the creditor had notice or actual knowledge of the debtor's bankruptcy case.  Since the penalty to the debtor for failure to schedule such debts is not nondischargeability but instead it is loss of the sixty day limitation period that applies under Fed. R. Bankr.P. 4007 governing the time in which to file nondischargeability complaints, this issue is not of significance in this case. *In re Amari*, 483 B.R. 836, 843 (Bankr. N.D. Ill. 2012).  BSB has timely instituted this action to determine the debt nondischargeable.

A willful violation of the post-discharge injunction granted by § 524 is punishable by contempt sanctions. *In re Pincombe*, 256 B.R. 774, 782 (Bankr.N.D.Ill.2000) (citing *In re*

9

*Andrus*, 184 B.R. 311, 315 (Bankr.N.D.Ill.1995)). The Court's authority to impose these sanctions arises from 11 U.S.C. § 105(a) which allows the Court to issue any order necessary or appropriate to enforce its orders. *In re Vazquez*, 221 B.R. 222, 227 (Bankr.N.D.Ill.1998).

The Debtors must demonstrate that the offending creditor acted intentionally and with knowledge that the attempt to collect the discharged debt was in violation of the discharge injunction. *In re Kewanee Boiler Corp.,* 297 B.R. 720, 736 (Bankr.N.D.Ill.2003). The evidence is conflicting, and more than one inference can be made regarding the intention of BSB in sending the payment book to the Marshalls. The designated evidence shows that at the time of the mailing of the payment coupons on June 6, 2012, the Godars were current on the annual Contract payments for the Farmland. The Trustee filed his *Motion to Complete Debtors Contract for Sale of Real Estate* on May 25, 2012, just days before the coupon book was mailed. BSB's mortgage was being paid in full and was not delinquent. It is impossible to conclude from the designated evidence why BSB sent the payment book on June 6, 2012 to the Marshalls' Petition Date Address. It could have been a clerical error, it could have been an attempt to collect more than full payment for the loan (as the Marshalls contend), or it could have been for the purpose of establishing the payoff of the indebtedness secured by the real estate (as BSB contends).

Debtors have the burden of establishing the creditor willfully violated the discharge injunction by an act meant to collect the debt from the debtors by clear and convincing evidence. The Marshalls have not shown that there is no genuine issue of material fact and they have not shown that they are entitled to judgment on those facts as a matter of law.

10

Accordingly, the Court DENIES the Marshalls' *Motion for Summary Judgment.*

**# # #**

Distribution:
David R. Krebs/Elizabeth N. Hahn/Courtney E. Chilcote, Attorneys for the Plaintiff
Richard Greeson, Attorney for the Defendant
U.S. Trustee